PENACHIO MALARA, LLP
Counsel for the Debtor
235 Main Street, Suite 600A
White Plains, NY 10601

Anne Penachio, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:                                                                    Chapter 11

TREVOR SPEARMAN,                                          Case No.: 09-22253(RDD)

          Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## DISCLOSURE STATEMENT IN CONNECTION WITH
## CHAPTER 11 PLAN OF REORGANIZATION
## PROPOSED BY THE DEBTOR


**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(A) OF THE UNITED STATES BANKRUPTCY CODE**

# I. PURPOSE OF THIS DISCLOSURE STATEMENT

**TREVOR SPEARMAN**, the debtor and debtor-in-possession herein (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement"), pursuant to § 1125(b) of title 11 of the United States Code (the "Bankruptcy Code"), to all of his known creditors and other parties in interest for the purpose of soliciting acceptances of his proposed Chapter 11 Plan of Reorganization (the "Plan"). The Plan has been filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and a copy of the same is attached hereto as Exhibit "A". By Order dated December ___, 2010, this Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Debtor's creditors to make an informed decision whether to accept or reject the Plan. The Debtor strongly urges that you read this Disclosure Statement because it contains a summary of the Plan provisions and important information concerning the Debtor's financial affairs, the administration of the Debtor's bankruptcy estate and the anticipated recovery by creditors of the Debtor. Capitalized terms utilized, but not defined herein, have the meanings ascribed to them in the Plan.

The primary objective of the Plan is to provide a mechanism for the resolution of the Debtor's outstanding creditor claims and for distributing the Debtor's property in conformity with the priority scheme set for distribution set forth in the Bankruptcy Code. The terms of the Plan have been developed in the context of providing what the Debtor believes will be the greatest return to the creditors.

The Debtor submits this Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code to all known holders of a claim against him who are entitled to vote to accept or reject the Plan. The purpose of this Disclosure Statement is to provide Claimants with adequate information that would enable a reasonable person to make an informed judgment in voting.

Detailed voting instructions are provided with the Ballot accompanying this Disclosure Statement. As more fully described herein, the Allowed General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan. Briefly, to vote on the Plan, a voting holder of a Class 3 Claim must complete the Ballot and mail it so that it is received no later than the Voting Deadline, which is 5:00 p.m. (Prevailing Eastern Time) on <u>January</u> _____, 2010, at the offices of Penachio Malara, LLP, 235 Main Street, Suite 600A, White Plains, NY 10601. Votes <u>may not</u> be transmitted orally, by facsimile or by e-mail. If a Ballot is damaged or lost, you may contact Penachio Malara, LLP at (914) 946-2889 or apenachio@pmlawllp.com to receive another. Any Ballot that is executed and returned but which does not indicate an acceptance or rejection of the Plan will not be counted. Accordingly, the Debtor urges all voting holders of Allowed General Unsecured Claims in Class 3 to promptly return their signed and completed Ballots. A hearing to consider the Debtor's request for Confirmation of the Plan will be held at the United States Bankruptcy Court for the Southern District of New York, before the Honorable Robert D. Drain, The Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, NY 10601, on <u>January</u> _____, 2010 at 10:00 AM

## II.    <u>DISCLAIMER</u>

NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THAT DATE. ALL CREDITORS SHOULD READ CAREFULLY AND CONSIDER FULLY THIS DISCLOSURE STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN. TO THE EXTENT OF ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL. TERMS USED IN THIS DISCLOSURE STATEMENT BUT THAT ARE NOT OTHERWISE DEFINED HEREIN HAVE THE MEANING ASCRIBED TO THEM TN THE PLAN AND, IF NOT DEFINED IN THE PLAN, THEN IN THE BANKRUPTCY CODE.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS THE EQUIVALENT OF A STATEMENT MADE IN FURTHERANCE OF SETTLEMENT NEGOTIATIONS.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND FINANCIAL FNFORMATION. ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED FROM THE DEBTOR'S BOOKS AND RECORDS AND PUBLIC PLEADINGS. ALTHOUGH DILIGENT EFFORTS HAVE BEEN MADE TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION IS WITHOUT SOME INACCURACY OR OMISSION.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTOR IS BASED UPON AN ESTIMATION OF SUCH VALUE. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL AND TAX ADVISORS IF YOU HAVE ANY QUESTIONS OR CONCERNS REGARDING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.

THE DISCLOSURE STATEMENT ORDER, A COPY OF WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SPECIFIES THE DEADLINES, PROCEDURES, AND INSTRUCTIONS FOR VOTING TO ACCEPT OR REJECT THE PLAN AND FOR FILPNG OBJECTIONS TO CONFIRMATION OF THE PLAN. A FORM BALLOT FOR VOTJUG ON THE ACCEPTANCE OR REJECTION OF THE PLAN IS ALSO PROVIDED HEREWITH. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN SHOULD READ THE DISCLOSURE STATEMENT, THE PLAN AND THE DISCLOSURE STATEMENT ORDERED THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

## III. BACKGROUND CONCERNING THE DEBTOR, THE BANKRUPTCY FILING AND THE ADMINISTRATION OF THE DEBTOR'S ESTATE

### A. Background Concerning the Debtor and His Bankruptcy Filing

The Debtor is an individual who is an architect and operates business from his home at 45 Eton Road, Thornwood, New York (the "Home"), which he holds jointly with his non-debtor spouse. The Debtor, his wife and their three young children reside in the Home. The Debtor filed for Chapter 11 relief because his liabilities exceeded the limitations imposed for Chapter 13 cases under Section 109 of the Bankruptcy Code. The Debtor's liabilities consist primarily of consumer debt, income tax obligations, and the first and second mortgages on the Home.

The Debtor began to experience financial reverses in 2007 due primarily to the general downturn in the real estate market and an increase in his expenses such as interest rates, oil prices, and taxes. The Debtor's sole source of household income is derived from his employment as an architect .

The Debtor's Chapter 11 Plan is modeled in sum and substance, on a Chapter 13 plan. The Debtor will make payments of $ 1,000.00 per month for sixty (60) months to a Disbursing Agent. Jeffrey L. Sapir has agreed to act as the Disbursing Agent subject to Court Approval.

The Debtor's personal property assets have limited liquidation value, as set forth on the liquidation analysis annexed hereto as <u>Exhibit "B"</u>. The total liquidation value of all of the Debtor's property is estimated to be $13,000.00. The assets mainly consist of two (2) vehicles which the Debtor and his wife used for work and family obligations and tools used to the Debtor's business as an architect. Accordingly, none of the assets could be reasonably used to fund a Chapter 11 Plan.

The Debtor has conducted an evaluation of his projected future income to determine whether he can reasonably make a distribution to his creditors from future earnings while reserving there from enough money to meet his family's reasonable and ordinary living expenses.

As reflected in the Projected Statement of Receipts and Disbursements attached hereto as Exhibit "C" (the "Projections"), the Debtor's current monthly net income totals approximately $12,000.00 and his total monthly household income totals approximately $11,000.00. It should be noted that the Debtor's income fluctuates. He typically earns more during the spring and summer months. His expenses similarly fluctuate. The Debtor has undertaken efforts to annualize his income and expenses. In preparing the summary annexed hereto as Exhibit C, the Debtor reviewed the monthly operating reports filed with this Court.

The Debtor's monthly income is not expected to change significantly in the foreseeable future. Notwithstanding, he anticipates that ample income to cover the increase in expenses. In addition, the Debtor hopes that his non-debtor spouse will become employed as their young children advance in age.

The Debtor has always endeavored to keep his expenses to a minimum and to spend his income in a responsible manner. The Debtor has significantly reduced his monthly expenses during the pendency of his Chapter 11 Case. The reduction was achieved through Loss Mitigation and through general cut backs.

The value of the Home has declined significantly during the past 4 years. In or about 2006, upon information and belief, the Home was worth about $1,300,000.00. The Home has been recently valued at $1,000,000.00. See Appraisal annexed hereto as Exhibit D. At the time of the Debtor's bankruptcy filing, the Home was encumbered by a first mortgage held by Bank of America ("BOA") with a balance of approximately $1,277,609.24 and a second mortgage held by National City Mortgage ("Nat City") with a principal balance due o approximately $220,536.10. Upon information and belief, during the pendency of the Debtor's Chapter 11 case, Nat City was acquired by PNC Financial Services ("PNC")

During this proceeding, the Debtor obtained a modification of his first mortgage through the Loss Mitigation Program promulgated by this Court. On February 3, 2010, this Court entered an Order approving a modification of the Debtor's mortgage held by BOA and expunging the arrears portion of BOA's claim (ECF # 47). The Debtor was unsuccessful in his efforts to obtain a modification of his second mortgage held by Nat City and/or its successor PNC. Based upon the fact that the value of the Home is less than the amount owed to BOA, the Debtor has moved contemporaneously herewith to reclassify Nat City's claim numbered 10 in the amount of $220,536.10 from a secured claim to an unsecured claim.

The last date by which proofs of claim for pre-petition obligations of the Debtor had to be filed was May 15, 2009. A total of fourteen (14) proofs of claim were filed against the Debtor all of which comported substantially with the liquidated, non-contingent and/or undisputed claims identified in the Schedules. A summary of the claims and scheduled claims is annexed hereto as Exhibit "E". They included the following:

| | | |
|---|---|---|
| 1. | Secured claim of BOA | $1,173,000.00 |
| 2. | Priority claims | $   17,851.57 |
| 3. | Unsecured claims | $   235,000.00 |

(presuming that Nat City's claim is reclassified)

The Debtor and his attorney undertook an analysis of the filed claims in an effort to reconcile the same. Upon conclusion of the analysis, it was determined that each of the filed claims had merit, and, thus, was not subject to any objection by the Debtor[1]. Moreover, the Debtor has remained current on all of his post-Petition obligations.

---

[1] It should be noted that the claim numbered 14 of Bank of America was modified by this Court in connection with loan modification (ECF #47).

The Debtor's estate has been fully administered with an eye toward maximizing the value

of the Debtor's non-exempt assets for all creditors. Accordingly, the Debtor now proposes the Plan

to his known creditors and parties in interest.

## IV.     SUMMARY OF PLAN PROVISIONS

As hereinafter more fully discussed, the Plan proposed by the Debtor provides for, among

other things:

(a)     the payment in full of all Statutory Fees on the Effective Date of the Plan;

(b)     the payment in full of all Allowed Administrative Claims by the Disbursing Agent over time.

(c)     the payment in full of all Priority claims by the Disbursing Agent over a period over a period of no more than five (5) years from the filing date; and

(d)     the payment of Allowed General Unsecured Claims of the sum of at least $30,000.00 equal to approximately 8% of the Allowed Amounts of their respective claims.

The Effective Date shall be the first business day which is ten days after the

Confirmation of the Plan.

The overall purpose of the Plan is to distribute a portion of the Debtor's future earnings to

the Debtor's creditors and to restructure the Debtor's liabilities on a fair and equitable basis in

accordance with the priorities established by law. The Plan represents the culmination of the

analyses conducted and efforts expended by the Debtor and his attorney concerning the best means

to maximize and allocate value to the Debtor's unsecured creditors. The Debtor has determined that

the Plan provides the highest value to creditors and greatly exceeds any value that might otherwise

be achievable in a liquidation under chapter 7 of the Bankruptcy Code. Accordingly, the Debtor

recommends that the Plan be accepted by her creditors.

## V.     SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS

Under the Plan, Claims against the Debtor are grouped into Classes according to

their similarity with other Claims and their relative legal and contractual priorities. All Allowed

Claims, other than Statutory Fees, Administrative Claims and Priority Tax Claims, are placed into Classes under the Plan. The Debtor believes that this classification scheme is consistent with the requirements of the Bankruptcy Code. The following is a summary of the classification and treatment of Claims under the Plan.

### 1. Statutory Fees

The Debtor has a statutory duty to pay all outstanding amounts that may be due to the Office of the United States Trustee (the "U.S. Trustee") upon Confirmation of the Plan, together with any fees due pursuant to 28 U.S.C. §1930(a)(6) and any interest pursuant to 31 U.S.C. § 3717 through the date of the entry of a Final Decree, conversion of the case or dismissal of the case.

The Debtor is current on all Statutory Fees as of the date hereof and does not believe that any Statutory Fees will be owed immediately prior to the Effective Date of the Plan. On the Effective Date, the Debtor will pay the U.S. Trustee the approximate sum of $600.00 which is the anticipated Statutory Fee on the amounts to be disbursed on the Effective Date. This fee will be paid directly by the Debtor and not the Disbursing Agent.

All Statutory Fees that may come due after the Effective Date shall be paid when due by the Debtor until the entry of a Final Decree in this case, or until this case is converted or dismissed.

### 2. Administrative Claims

Administrative Claims are defined in the Plan as the costs and expenses of administration of the Debtor's Chapter 11 case incurred on or after the Petition Date and (except as to post-Petition Date obligations incurred and paid by the Debtor in the ordinary course) allowed by final order under §503(b) of the Bankruptcy Code. These Claims include, without limitation, any actual and necessary expenses: (a) of preserving the estate of the Debtor; (b) any indebtedness or obligation incurred or assumed by the Debtor in connection with her day-to-day affairs or for the acquisition or lease of

9

property or for the procurement of services; (c) any costs and expenses of the Debtor for the management, maintenance, preservation, sale or other disposition of any assets; (e) the administration and implementation of the Plan; (d) the administration, prosecution or defense of Claims by or Claims against the Debtor and for Distributions under the Plan; and (c) any allowances of compensation and reimbursement of expenses to the extent allowed by an order of the Bankruptcy Court, whether arising before or after the Effective Date of the Plan.

Allowed Administrative Claims are unclassified under the Plan and holders of Allowed Administrative Claims are not entitled to vote on the acceptance or rejection of the Plan. If there is no significant litigation initiated or objections filed with respect to Confirmation of the Plan, and the Plan is confirmed within the next thirty to ninety days, it is estimated that the Allowed Administrative Claims to paid on the Effective Date are comprised of the following:

| Claimant | Amount | Comments |
|---|---|---|
| Penachio Malara, LLP | $15,000.00 | Approximate Final Fees and Expenses to be Requested as Counsel to the Debtor (Net of retainer payment) |
| Disbursing Agent (Jeffrey L. Sapir, Esq.) | $5,000.00 | 10% of disbursements made |
| Total: | $20,000.00 | |

The actual amounts of the Allowed Administrative Claims may increase or decrease from the amounts listed above prior to the Effective Date. In accordance with certain mandatory provisions of the Bankruptcy Code, the Plan provides that holders of Allowed Administrative Claims will be entitled to full payment of their Claims: (a) in cash on the Effective Date or as soon thereafter as is practicable; or (b) on such terms as are mutually agreed to by the holder of an Allowed Administrative Claim and the Debtor. Other than those listed above, there are no known potential Administrative Claims against the estate.

3. **Class 1 - Secured Claims of Bank of America, National City Mortgage and Ford Motor Credit Company**

Class 1 consists of the Allowed Secured Claim of BOA against the Debtor. Said claims

total approximately $1,173,238.20 and represents amounts outstanding on the first mortgage encumbering the Home as modified. The Debtor is current with regard to his obligations to BOA. Ford Motor Credit Company ("FMCC") filed a secured claim which encumbers the Debtor's 2006 Land Rover. During this proceeding, the Debtor satisfied FMCC in full by making monthly installment payments. The Debtor is awaiting receipt of a satisfaction and release of lien. The value of the vehicle, which is now unencumeberd, is approximately$12,000.00.

Subsequent to Confirmation of the Plan, BOA will retain its lien against the collateral in which it is secured and will continue to be paid by the Debtor in accordance with its modified mortgage agreements. As such, Class 1 is not impaired under the Plan and BOA and FMCC are not entitled to vote on the acceptance/rejection of the Plan.

### 4. Class 2- Priority Income Tax Claim

Class 2 consists of Priority income tax claim of $17,851.57 reflecting primarily income taxes for 2008. The Debtor will make payments in full under the Plan within five (5) years of the filing date as required under 11 U.S.C. § 1129 (a)(9)(c). As such, Class 2 creditor is not entitled to vote in the Plan.

### 5. Class 3- General Unsecured Claims

Class 3 consists of all Allowed General Unsecured Claims against the Debtor. Under the Plan, General Unsecured Claims include all Claims other than Statutory Fees and Administrative Claims. The Allowed General Unsecured Claims in Class 3 total approximately $335,000.00 as set forth on Exhibit "D".

The Plan provides that the holders of Allowed Class 3 General Unsecured Claims will receive a cash Distribution equal to their respective *Pro Rata* share of at least $22,000.00 *{i.e.,* a recovery of approximately 8% on their Allowed Claims) over a period of sixty (60) months. Class 3 is impaired under the Plan and, as such, the holders of Class 3 General

Unsecured Claims are entitled to vote on the acceptance/rejection of the Plan.

## VI.  DISTRIBUTIONS UNDER AND IMPLEMENTATION OF THE PLAN

~~The Plan is a "pot plan."~~ The Debtor will fund the Plan with future earnings in the amount of $1,000.00 per month.   The Debtor will make monthly payments to a Disbursing Agent.   The Disbursing Agent will make payments quarterly or in more frequent installments in his discretion.  The aggregate amount that will be devoted by the Debtor to the Plan is $60,000.00.

## VII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Under §365 of the Bankruptcy Code, a debtor has the right, subject to approval of the bankruptcy court, to assume or reject executory contracts and unexpired leases.  Although not defined in the Bankruptcy Code, an "executory contract" is usually described as a contract under which material performance (other than the payment of money) is due by each party. If an executory contract or unexpired lease is rejected under §365 of the Bankruptcy Code, the "rejection" is treated as a breach of the contract or lease prior to the Petition Date giving rise to a pre-petition unsecured claim. In addition, "rejection" damages are limited in certain contexts under §502 of the Bankruptcy Code. If an executory contract or unexpired lease is assumed, the Debtor has the obligation to cure any default and to perform its obligations thereunder in accordance with the terms of such agreement.

The Debtor is not a party to any executory contracts at this time.

## VIII.  RIGHTS OF ACTION

The Plan provides that any rights or causes of action accruing to the Post-Confirmation Debtor including, without limitation, those arising under or pursuant to the Bankruptcy Code, shall remain assets of the Post-Confirmation Debtor. The Post-Confirmation Debtor may pursue,

abandon, settle or release all reserved rights of action, as appropriate, in accordance with what is in the best interests, and for the benefit, of the Post-Confirmation Debtor. In connection therewith, the Plan provides that any Distributions provided for therein and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of the Post-Confirmation Debtor to pursue and prosecute any reserved rights of action including without limitation, those arising under or pursuant to the Bankruptcy Code. The Debtor does not believe that any fraudulent conveyances existed prior to the filing of the petition and further believes that all pre-petition payments were made in the ordinary course of business thereby eliminating any potential recovery of preferential transfers.

## IX.    LEGAL EFFECTS OF CONFIRMATION OF THE PLAN

### 1.    Binding Effect

Pursuant to § 1141(a) of the Bankruptcy Code, once confirmed, the provisions of the Plan shall be binding upon the Debtor, the Debtor, all Creditors and other parties in interest, regardless of whether they cast a Ballot to accept or reject the Plan.

### 2.    Discharge

Pursuant to §1141(d)(5) of the Bankruptcy Code, upon the completion of all payments required under the Plan, the Bankruptcy Court will enter a discharge of the Debtor from his debts that arose before the Confirmation Date. As such, the rights afforded in the Plan and the treatment of all Claims therein shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever (including any interest accrued on such Claims), from and after the Petition Date against the Debtor and his estate except as otherwise provided in the Plan, in §1141 of the Bankruptcy Code, or in the Confirmation Order.   Mechanically, when the Plan payments are completed, the Debtor shall advise the Court and seek the entry of a discharge.

### 3. Limitation of Liability in Connection with the Plan

In accordance with § 1125(e) of the Bankruptcy Code, the Plan provides that neither the Debtor nor his counsel or agents, including the Disbursing Agent shall have incurred or shall incur any liability to any holder of a Claim or any other Person for any act or omission in connection with, or arising out of, this Disclosure Statement, the pursuit of approval of this Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence misconduct. This provision shall not limit the liability of the Debtors' professionals to their clients contrary to the requirements of Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

## X. RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, §1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a) To consider any modification of the Plan pursuant to §1127 of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;

(b) To hear and determine:

    (i) all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

    (ii) all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

    (iii) all rights or causes of action which may exist on behalf of the estate, including actions commenced to recover preferential transfers, accounts receivable and other property of the estate;

(iv)     applications for allowance of compensation and expense reimbursement of professionals for periods prior to the Effective Date;

(v)     any and all applications, adversary proceedings and litigated matters;

(vi)     to enter a final decree closing the Chapter 11 Case; and

(vii)     to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

(c)     To enter a discharge.

## XI.     CONDITIONS TO CONFIRMATION, EFFECTIVE

## DATE AND CONSUMMATION OF THE PLAN

It is a condition to Confirmation of the Plan that (a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan, and (b) the Confirmation Order is satisfactory to the Debtor in form and substance. The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived:

(a)     The Bankruptcy Court shall have entered the Confirmation Order; and

(b)     The Confirmation Order shall have become a Final Order.

The Debtor may at any time, without notice or authorization of the Bankruptcy Court, waive any or all of the foregoing conditions. The failure of the Debtor to satisfy or waive such condition may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any actions taken by the Debtor). The Debtor reserves the right to assert that any appeal from the Confirmation Order shall be moot after substantial consummation of the Plan. In the event that the aforementioned conditions have not occurred or been waived on or before one-hundred-eighty (180) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court made on the request of the Debtor or any party in

interest and an opportunity for parties in interest to be heard.

The Plan shall be deemed substantially consummated after the Debtor makes 6 monthly payments to the Disbursing Agent. Upon substantial consummation, the Debtor may seek to close his Chapter 11 case. If the Debtor closes his case, the Debtor will seek to re-open his case after all Plan payments have been made in order to seek a discharge."

## XII.   IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE

The tax consequences of the Plan may impact the decision of the holder of a Claim in determining whether to accept or reject the Plan. Moreover, the tax consequences will vary depending upon the individual circumstances of holder of a Claim.

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the holders of Class 3 General Unsecured Claims. The summary is provided for informational purposes only and is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof and all of which are subject to change, possibly with retroactive effect. This summary does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code and also does not discuss any aspects of state, local, or foreign taxation. Additionally, a substantial amount of time may elapse between the Effective Date and the receipt of the final Distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated there under. No ruling will be sought from the Internal Revenue

Service with respect to any of the tax aspects of the Plan and no opinion of counsel has heretofore been obtained by the Debtor as proponent of the Plan with respect thereto. Accordingly, each holder of a Claim should consult his, her or its own tax advisor to determine what effect, if any, the treatment afforded its respective Claim under the Plan may have under federal, state and/or local tax laws, and the laws of any applicable foreign jurisdictions.

On the exchange of its Claim for cash and/or property, each holder of a Claim in Class 3 will recognize gain or loss measured by the difference between: (a) the aggregate fair market value of the cash and/or property received; and (b) such holder's tax basis in the Claim. To the extent that the cash and/or property received by a holder of a Claim is attributable to accrued interest on such Claim, the cash and/or property received will be deemed made in payment of such interest. Conversely, a holder of a Claim will recognize a deductible loss to the extent any accrued interest previously included in its gross income is not paid in full. The allocation for federal income tax purposes between principal and interest of amounts received in exchange for the discharge of a Claim at a discount is not clear. However, the Debtor intends to treat any amount received by holders of Claims as first allocated to principal.

Where gain or loss is recognized by a holder in respect of its Claim, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including but not limited to: (a) the nature or origin of the Claim; (b) the tax status of the holder; (c) whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held; (d) whether the Claim was acquired at a market discount; and (e) whether and to what extent the holder had previously claimed a bad debt deduction with respect to the Claim. Any cash and/or property received by a holder of a Claim after the Effective Date may be subject to the imputed interest provisions of the Tax Code.

No statement in this Disclosure Statement should be construed as legal or tax advice.

The Debtor and his counsel and accountants do not assume any responsibility or liability for the tax consequences the holder of a Claim may incur as a result of the treatment afforded its Claim under the Plan. Again, all holders of Claim are urged to consult with their own tax advisor regarding the potential tax consequences of the Plan.

CIRCULAR 230 DISCLOSURE: This tax discussion was written to support the promotion or marketing of the Plan. To ensure compliance with requirements imposed by the Internal Revenue Service, we are informing you that this discussion was not intended or written to be used, and cannot be used, by any person for the purpose of avoiding tax-related penalties that may be imposed the taxpayer under the Tax Code. Taxpayers should seek advice based on their particular circumstances from an independent tax advisor.

## XII. GENERAL INFORMATION REGARDING CONFIRMATION PROCEDURE AND VOTING

### A. Plan Confirmation Process

1. Requirements.

The requirements for Confirmation of the Plan are set forth in detail in §1129 of the Bankruptcy Code. The following summarizes some of the more salient requirements for such Confirmation:

(a) Acceptance by Impaired Classes. As discussed in further detail below, except to the extent that the "cramdown" provision of §1129(b) of the Bankruptcy Code may be invoked, each Impaired Class of Claims must vote to accept the Plan. "Impaired" is defined in §1124 of the Bankruptcy Code. A Claim is Impaired unless the Plan leaves unaltered the legal, equitable and/or contractual rights of the holder thereof. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in the Impaired

Class of Claims must vote to accept the Plan, or the Plan must qualify for "cramdown" of any non-accepting Class pursuant to § 1129(b) of the Bankruptcy Code.

(b)     Feasibility. The Bankruptcy Court is required to find that the Plan is likely to be implemented and that the parties required to perform or pay monies under the Plan are likely to be able to do so.

(c)     "Best Interests" Test. The Bankruptcy Court must find that the Plan is in the "best interests" of Creditors. To satisfy this requirement, the Bankruptcy Court must determined that each holder of a Claim against the Debtor: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount which such holder would receive if the Debtor's property were liquidated under chapter 7 of the Bankruptcy Code on that date.

(d)     Disposable Income Test: §1129(a)(15). The Bankruptcy Court must find that in the event that an unsecured creditor objects to the Plan, (i) the value of the property to be distributed under the Plan is not less than the amount of the claim or (ii) the value of the property to be distributed under the Plan is not less than the Debtor's disposable income as defined in § 1325 (b)(2) to be received during the five (5) year period beginning on the date that the first payment is due.

## 2.     **Confirmation Hearing**

To confirm the Plan, the Bankruptcy Court must hold a hearing under § 1128 of the Bankruptcy Code to determine whether the Plan meets the Requirements of § 1129(b) of the Bankruptcy Code (the "Confirmation Hearing"). The Confirmation Hearing will be held at the United States Bankruptcy Court for the Southern District of New York, before the Honorable Robert D. Drain, Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street,

White Plains, New York 10601 on December \_\_\_, 2010 at 10:00 AM.

### 3.    Objections to Confirmation

Any party in interest wishing to object to Confirmation of the Plan must state such objection in writing and appear at the Confirmation Hearing to pursue same. Any objection must be filed with the Clerk of the Bankruptcy Court, with a courtesy copy sent to the chambers of the Honorable Robert D. Drain and served upon the following parties so as to be actually received by November ____, 2010 at 5:00 PM: (i) Penachio Malara, LLP, 235 Main Street, Suite 600A, White Plains, New York 10601; and (ii) Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York, 10004.

## B.    Voting on the Plan

### 1.    Who May Vote

Pursuant to § 1126 of the Bankruptcy Code, only the holders of Claims in Classes that are Impaired under the Plan may vote on the Plan.  In this case, only Class 3 may vote.

### 2.    Classes Under the Plan

Under the classification scheme provided in the Plan, Class 1 consists of all Secured Claims against the Debtor, Class 2 consists of Priority tax claims and Class 3 consists of all General Unsecured Claims against the Debtor. There are no other classes of Claims under the Plan.

### 3.    Impairment of Claims

Under the Plan, the Claims in Class 1 and 2 are not impaired. The Claims in Class 3 are impaired.

### 4.    Voting

Being unimpaired, holders of Class 1 and 2 Claims are not entitled to vote and are deemed to have accepted the Plan. Being impaired, holders of Class 3 Claims are entitled to vote on the

Plan. This Disclosure Statement is being distributed for informational purposes to all Creditors and parties in interest without regard to their right to vote on the Plan. If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for that purpose.

**5.    Estimation of Claims for Voting Purposes**

Solely for the purposes of voting on the Plan, and for no other purpose, each holder of an Allowed Claim shall include on its Ballot the amount which such Claimant believes is due it from the Debtor. THIS AMOUNT SHALL NOT BE DEEMED IN ANY MANNER TO BE THE ALLOWED AMOUNT OF SUCH CLAIM. THE ALLOWED AMOUNT WILL ONLY BE DETERMINED AS PROVIDED IN THE PLAN. The amount set forth on the Ballot is solely for the purpose of voting upon the Plan and for the calculation of whether the Plan shall have been accepted in accordance with §1129(a) of the Bankruptcy Code.

If a Claimant holds more than one Claim in any one particular Class, all Claims of such holder in such particular Class shall be aggregated and deemed to be one Claim for purposes of determining the number and amount of Claims in such Class voting on the Plan.

**6.    Binding Effect**

Whether a Claimant votes on the Plan or not, such person shall be bound by the terms of the Plan if the Plan shall be confirmed by the Bankruptcy Court. Unless a Ballot shall be completed and returned in accordance with the approved Bankruptcy Court procedures, a Claimant will not be included in the vote for purposes of accepting or rejecting the Plan or for purposes of determining the number of Persons voting on the Plan.

**7.    Voting Procedure and Deadlines**

In order for your vote to accept or reject the Plan to be tabulated, you must complete, date, sign and properly mail the enclosed Ballot to counsel to the Debtor at the following address:

Penachio Malara, LLP, 235 Main Street, Suite 600A, White Plains, New York 10601.

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be <u>received</u> by counsel to the Debtor at the address set forth above on or before December ___, 2010 at 5:00 p.m. Once you have delivered or mailed your Ballot, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and a hearing. Ballots or votes on the acceptance or rejection of the Plan cannot be transmitted orally or by facsimile.

Any Ballot received by counsel to the Debtor that does not identify the Claimant, or is unsigned, or which does not indicate acceptance or rejection, or (unless Claimant's Claim is listed as undisputed, not contingent and fully liquidated in the Debtor's current schedules of liabilities) does not include the amount believed to be owed such Claimant, shall not be counted as a vote, either to accept or reject the Plan.

You are urged to complete, date, sign, and promptly mail the enclosed Ballot. Please be sure to complete the Ballot properly and legibly identify the amount of your Claim and the name of the Claimant.

## XIIII  FEASABILITY OF THE PLAN

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor unless contemplated by the Plan. As discussed above, the funds needed to make the Distributions required to be made under the Plan will be generated by future earnings.

For purposes of determining whether the Plan meet the "feasability" requirements of the Bankruptcy Code, the Debtor and his professionals analyzed his future prospects, future income and future liabilities and incorporated their findings into the Projections attached hereto as <u>Exhibit</u> "<u>C</u>",

23

As reflected therein, the Debtor believes that, after the restructuring of his debt obligations provided for under the Plan, the Debtor will have the funds sufficient to make the future Distributions called for under the Plan while remaining current on his ordinary debts. Accordingly, the Debtor believes that confirmation is not likely to be followed by the liquidation or further financial reorganization of the Debtor.

## XV. <u>BEST INTERESTS</u>

Notwithstanding acceptance of the Plan by the requisite number of impaired Classes of Claims, the Bankruptcy Court must independently determine that the Plan provides each member of each impaired Class of Claims a recovery that has a value at least equal to the value of the Distribution that each such creditor would received if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

The Debtor believes that the Plan is in the best interests of creditors because it provides for an orderly and expeditious Distribution of the Debtor's assets, thus maximizing the recovery to creditors. Under the scenario presented under the Plan, holders of General Unsecured Claims will receive a Distribution of approximately 12% of the Allowed Amounts of their Claims. In contrast, in the event of a liquidation of the Debtor under chapter 7 of the Bankruptcy Code, it is likely that creditors would receive substantially less on account of their Allowed Claims because: (a) the Debtor's assets are substantially exempted from recovery in bankruptcy; (b) the substantial additional expenses of administration, including a chapter 7 trustee's commissions and fees for such trustee's counsel, accountants, and other professionals likely to be retained, would be incurred with priority over Allowed Genera! Unsecured Claims, diluting their recovery; and (c) any Distribution on Allowed General Unsecured Claims would likely be substantially delayed while expenses of administration of the estate would continue to grow. In order to illustrate this point, the Debtor and her professionals have prepared the Liquidation Analysis

attached hereto as <u>Exhibit</u> "<u>B</u>". Thus, the Debtor respectfully submits that the Plan in the best interests of creditors.

## XVI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor has evaluated alternatives to the Plan, including alternative Plan structures and terms; the adoption of a plan of liquidation; and the pursuit of various litigation strategies. While the Debtor has concluded that the Plan is the best alternative and will maximize recoveries by holders of Allowed Claims, if the Plan is not confirmed, the Debtor or any other party-in-interest could attempt to formulate and propose a different plan or plans of reorganization. Further, if no plan of reorganization can be confirmed, the Debtor's Chapter 11 case may be dismissed or converted to a chapter 7 case. In a liquidation case under chapter 7, the proceeds of the liquidation would be distributed to the respective creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code and contractual priorities. However, the Debtor believes holders of Allowed Claims would receive substantially less under chapter 7 because of the administrative costs and commissions associated with a chapter 7 trustee (discussed above) and because of the liens, encumbrances and exemptions applicable to the Debtor's assets. Accordingly, the Debtor believes that Confirmation and consummation of the Plan is preferable to the alternatives described above.

## XVII. <u>RECOMMENDATION AND CONCLUSION</u>

For all of the reasons set forth in this Disclosure Statement, the Debtor believes that the Confirmation and consummation of the Plan is the best means available to provide the greatest level of recovery to creditors in accordance with their legal and contractual rights. Consequently, the Debtor urges all holders of Allowed Claims in Class 3 to vote to accept the Plan and to evidence their acceptance by duly completing and returning their Ballots so that they will be received on or before 5:00 p.m. on December ____, 2010.

Dated: White Plains, New York

     October 9, 2010

Respectfully submitted,

PENACHIO MALARA, LLP

/s/ Anne Penachio

_____

Anne Penachio, Esq.
Counsel for Debtor
235 Main Street Suite 600A
White Plains, NY 10601
(914) 946-2889

/s/ Trevor Spearman

By: _____

    Trevor Spearman